# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**September 19, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **C.W., K.W., and T.R.**

**No. 16-0019** (Wood County 14-JA-108, 14-JA-109, & 14-JA-110)

# MEMORANDUM DECISION

Petitioner Father P.W., by counsel Debra Steed, appeals the Circuit Court of Wood County's December 18, 2015, order terminating his parental, custodial, and guardianship rights to C.W. and K.W. and his custodial rights to T.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Courtney L. Ahlborn, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in adjudicating him as an abusing parent on insufficient evidence and in allowing the victim of his abuse to testify in the proceedings.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2014, the DHHR filed an abuse and neglect petition against petitioner that alleged he sexually abused a ten-year-old child, L.H., who was a guest in his home. Additionally, the petition alleged that at least one of petitioner's children was present in the room when the abuse took place. Prior to the petition's filing, L.H. participated in an interview wherein she disclosed that while staying at petitioner's home she awoke in the night to find petitioner touching her buttocks and genitals. As to petitioner's children, C.W., K.W., and regarding T.R., who petitioner had legal custody of, the petition alleged that their mother

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

previously had her parental rights to the children terminated in a separate abuse and neglect proceeding and that petitioner was instructed to not allow the mother unsupervised contact with the children in violation of the circuit court's order. According to the DHHR, petitioner allowed the mother to have unsupervised visits with the children. Moreover, the petition alleged that petitioner's wife had her parental rights to other children involuntarily terminated in a separate abuse and neglect proceeding.

Following adjudicatory hearings held in January and August of 2015, the circuit court entered an order in October of 2015 that adjudicated petitioner as an abusing parent due to his sexual abuse of L.H. and the fact that he allowed the children's mother to have unsupervised visitation with the children. During one of these hearings, L.H. testified to the allegations against petitioner. The victim detailed that petitioner awakened her at approximately 3:00 a.m. by touching her "butt and [her] private." She further testified that when she awoke her pants and underwear had been pulled down to her knees and petitioner was touching her "private area[,]" which she gestured to establish was her vaginal area. The victim indicated that when she asked petitioner if she could go home, he left the room and indicated he would contact her parents. She later said that petitioner told her he had contacted her parents and that her mother was on the way. However, the victim testified that her mother never arrived. According to the victim, she went back to sleep only for petitioner to "tr[y] to do it again[,]" at which point the victim told him to stop and petitioner left the room. The victim further testified to the events following the sexual abuse, including the fact that she disclosed the abuse to petitioner's wife the next morning and asked the wife to call her mother. Petitioner's wife told the victim that her mother was visiting someone, which the child believed. As such, the victim spent another night in petitioner's home. When the victim's mother eventually picked her up, the victim asked her mother why she did not pick her up earlier. According to the victim's mother, neither petitioner nor his wife ever called. Following her return home, the victim told her mother, father, and sister-in-law about petitioner's sexual abuse.

In his defense, both petitioner and his wife testified about the incident in question. According to their testimony, both petitioner and the wife came into the children's room in the night because the victim, who takes medication to help with sleep, was having night terrors. According to petitioner, he touched the victim so that he could separate her from K.W., who was sleeping in the same bed, and put a body pillow between them to ensure the victim did not harm K.W. while thrashing in bed. According to petitioner's wife, the victim's mother did not send enough medication for the victim to stay at the house for two nights, so petitioner's wife went to the victim's home to obtain more medication the day after the abuse when she was unable to reach the victim's mother.

Following a dispositional hearing in December of 2015, the circuit court terminated petitioner's parental, custodial, and guardianship rights to C.W. and K.W. and his custodial rights to T.R. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

2

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

First, the Court finds no error in the circuit court adjudicating petitioner as an abusing parent. In support of this assignment of error, petitioner argues that the circuit court erred in finding that he sexually abused L.H. The Court, however, does not agree.[3] According to petitioner, the evidence below was insufficient because the DHHR failed to provide any evidence to corroborate the victim's allegations against him; his own testimony and that of his wife directly contradicted the victim's testimony; the DHHR failed to establish that he touched the victim for sexual gratification; and the victim's testimony was inherently unreliable and contained contradictions. The Court notes, however, that petitioner's argument on this issue ignores our prior case law dealing with the sufficiency of evidence in cases concerning sexual abuse and, moreover, misrepresents the evidence below.

In addressing sufficiency of the evidence claims in regard to abuse and neglect proceedings, we have set forth the following standard:

"W.Va.Code [§] 49-6-2(c) [now West Virginia Code § 49-4-601], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (internal citations omitted). Pursuant to West Virginia Code § 49-1-201, "sexual abuse" is defined, in relevant part, as

---

[3]In support of this assignment of error, petitioner also alleges that the circuit court erred in finding that he allowed the children to have unsupervised visitation with their biological mother. However, because the circuit court's finding that petitioner sexually abused L.H. is a sufficient basis for his adjudication as an abusing parent, we decline to address this argument on appeal.

"sexual contact, . . . which a parent, guardian or custodian engages in . . . with a child[.]"[4] That statute goes on to indicate that "sexual contact" in abuse and neglect proceedings is the same as the definition of that term as set forth in West Virginia Code § 61-8B-1(6), which states that

> "[s]exual contact" means any intentional touching, either directly or through clothing, of the breasts, buttocks, anus or any part of the sex organs of another person, . . . where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party.

According to petitioner, the DHHR failed to put on any evidence that his alleged touching was done for sexual gratification, especially in light of the fact that the DHHR did not introduce any evidence of his lustful disposition toward young children. However, the record is clear that the DHHR did submit such evidence, which petitioner simply ignores. Namely, the victim in this matter testified that petitioner pulled her shorts and underwear down to her knees and touched her buttocks and vaginal area. Contrary to petitioner's assertion that the child never testified that he touched her vaginal area, the record clearly indicates that she testified that petitioner touched her "private area" and that she gestured toward her vagina. In fact, the circuit court specifically noted that the victim "pointed to her vagina area." While this may not constitute direct evidence of petitioner's intention to achieve sexual gratification from the touching, it certainly amounts to circumstantial evidence and is sufficient to support the circuit court's finding of abuse.

In support of this assignment of error, petitioner relies heavily on his allegation that the victim's testimony lacked credibility and that his testimony and that of his wife directly contradicted the victim's. Specifically, petitioner argues that certain aspects of the victim's testimony, including when the children went to sleep, when she told her parents about the abuse, and when Child Protective Services was notified, are contradictory or inherently unreliable. Again, petitioner's argument ignores our prior holdings. As the trier of fact, the circuit court was tasked with making credibility determinations as to the various witnesses and these findings are entitled to deference on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Contrary to petitioner's argument on appeal, the circuit court found the victim to be credible. Moreover, the circuit court found that the testimony of petitioner and his wife lacked credibility. Specifically, the circuit court found that "[t]he testimony of [petitioner] is largely not credible and contradicted by the credible testimony of the child, . . . of Brittany Harris, a Child Protective Services Worker who conducted an investigation of the child's accusations, and of Nicole Lim, a nurse practitioner who treated [the child]." The circuit court also found that petitioner's wife "attempted to protect [petitioner] throughout these proceedings and during the investigation of sexual abuse allegations prior to the filing of a petition." Ultimately, as it found petitioner's testimony lacked credibility, the circuit court further found that petitioner's wife's testimony was "supportive of or identical to the

---

[4]Because the adjudicatory hearing concluded after the new version of West Virginia Code §§ 49-1-101 through 49-7-304 took effect, we will apply the new version to the circuit court's adjudicatory rulings.

4

account provided by [petitioner]." As such, it is clear that petitioner's arguments regarding the credibility of the various witnesses below are without merit.

Additionally, in addressing sexual crimes in the criminal context, we have held that "'[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible . . . .' Syl. pt. 5, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981)." Syl. Pt. 1, *State v. Haid*, 228 W.Va. 510, 721 S.E.2d 529 (2011). Given that the higher burden of proof for a criminal conviction can be supported by the uncorroborated testimony of the victim, so too can an adjudication of sexual abuse under a clear and convincing standard be supported by such testimony. However, it is important to note that, contrary to petitioner's argument on appeal, the testimony of the victim in this matter was corroborated by other witnesses, as set forth above. For these reasons, the Court finds no error in the circuit court's adjudication of petitioner as an abusing parent.

Finally, the Court finds no error in the circuit court permitting the victim to testify in the proceedings below. On appeal, petitioner argues that Rule 8 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings required the circuit court to exclude the victim's testimony because the potential psychological harm to the victim outweighed the necessity of the testimony. Upon our review, the Court finds no merit to this argument. According to Rule 8(a),

> [n]otwithstanding any limitation on the ability to testify imposed by this rule, all children remain competent to testify in any proceeding before the court as determined by the Rules of Evidence and the Rules of Civil Procedure. However, there shall be a rebuttable presumption that the potential psychological harm to the child outweighs the necessity of the child's testimony and the court shall exclude this testimony if the potential psychological harm to the child outweighs the necessity of the child's testimony. Further, the court may exclude the child's testimony if (A) the equivalent evidence can be procured through other reasonable efforts; (B) the child's testimony is not more probative on the issue than the other forms of evidence presented; and (C) the general purposes of these rules and the interest of justice will best be served by the exclusion of the child's testimony.

Petitioner argues that the DHHR failed to put on any evidence to rebut the presumption that the potential psychological harm to the victim outweighed the necessity of her testimony. Again, however, petitioner's argument ignores the evidence in the record.

In order to protect the victim's interest below, the circuit court appointed her a guardian ad litem independent of the guardian appointed to represent petitioner's children. When the victim was called to testify, her guardian informed the circuit court that the only apprehension on the victim's part was testifying in petitioner's presence. As such, the victim's guardian moved to exclude petitioner from the courtroom during the victim's testimony, and the circuit court granted the same. According to the circuit court, the victim "was willing and able to testify without incurring further psychological harm so long as she was able to do so outside of [petitioner's] presence[.]" Ultimately, the circuit court found that "the procedure used in connection with the [victim's] testimony was within the parameters set out in the Rules of

Procedure for Child Abuse and Neglect Proceedings and adequately protected . . . against a risk of psychological harm to the child." Accordingly, petitioner's argument that there was no evidence to rebut the presumption that the child should not have testified is without merit.

Further, given that the presumption was rebutted, the circuit court clearly had discretion to permit the testimony. On appeal, petitioner makes much of a recording of the victim's prior statement regarding the allegations of abuse. According to petitioner, the circuit court failure to view this recorded statement violated its duty to determine if equivalent evidence could be produced. However, there is no indication in the record that petitioner or any other party moved to introduce this recorded statement as an equivalent means of evidence. To the contrary, the circuit court specifically found that the victim's "alleged sexual abuse by [petitioner] was the principal allegation of abuse against him and no other person witnessed the abusive behavior." As such, it is clear that the circuit court considered the victims's testimony necessary and, as such, did not abuse its discretion in allowing the same.

For the foregoing reasons, we find no error in the circuit court's December 18, 2015, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: **September 19, 2016**

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II